IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

CHRISTOPHER JANIS,                    CASE NO.:
MICHAEL JANIS,
JONATHAN JANIS,
MARC GONSALVES,
THOMAS HOWES, and
KEITH STANSELL,

       Plaintiffs,

vs.

CARTEL OF THE SUNS;
NICOLAS MADURO MOROS; and
TARECK ZAIDAN EL AISSAMI MADDAH;

       Defendants.
_____/

## **COMPLAINT**

Plaintiffs sue Defendants and allege:

## **I.  THE ACTION,  JURISDICTION & VENUE**

1.      This is a civil action for damages arising from acts of international terrorism by members of the CARTEL OF THE SUNS *aka* "Cartel de Los Soles", a vast international narcotics trafficking conspiracy whose members and conspirators in the Revolutionary Armed Forces of Colombia ("FARC"), a foreign terrorist organization, purposely targeted and shot down a U.S. narcotics counter-surveillance aircraft and its crew.   In 2020, the United States unsealed an indictment against NICOLAS MADURO MOROS publicly revealing that since the 1990s, the CARTEL OF THE SUNS and its leaders have been engaged in a criminal conspiracy with the FARC to flood the United States with cocaine.   The Defendant leaders of the CARTEL OF THE SUNS remain fugitives from United States narcotics trafficking charges with substantial rewards for information leading to their capture.

2.      On February 13, 2003, Plaintiffs were U.S. nationals conducting a U.S. Government counter-narcotics surveillance flight at the time their aircraft was shot down by the FARC.  The crew was:  (i) Thomas Janis – pilot in command; (ii) Thomas Howes – co-pilot; (iii) Keith Stansell – mission commander; and (iv) Marc Gonsalves – intelligence officer.  The aircraft and crew had been targeted for shootdown as a part of the FARC's continuing narcotics conspiracy with the CARTEL OF THE SUNS and its leaders.  At the time of the shootdown, extra-judicial killing of Janis, and hostage-taking and torture of Howes, Stansell and Gonsalves, the FARC was a designated Foreign Terrorist Organization ("FTO"). After a successful crash landing on a jungle mountain ridgeline, the pilot, THOMAS JANIS, was shot and killed by the FARC - execution style planeside. THOMAS JANIS was an Alabama native and a highly decorated retired member of the U.S. Army's elite Special Mission Unit Delta Force, and was posthumously inducted into the U.S. Army Aviation Hall of Fame.  The FARC captured and imprisoned KEITH STANSELL, MARC GONSALVES and THOMAS HOWES and held them hostage and tortured them in the Colombian and Venezuelan jungles for over 5 years (1,967 days total captivity).

3.      This action is brought pursuant to the civil remedies provisions of the federal Anti-Terrorism Act ("ATA"), 18 U.S.C. §§ 2333(a); 2333(d)(2) which allows a U.S. national to sue for compensatory damages as a result of an act of international terrorism.

4.      Pursuant to 18 U.S.C. § 2338, the district courts of the United States have exclusive jurisdiction over this action.

5.      Venue is proper under 18 U.S.C. § 2334(a) because Plaintiff CHRISTOPHER JANIS resides within this District in Dadeville, Alabama (Tallapoosa County), and because Defendants are all alien nationals and may be sued in any district pursuant to 28 U.S.C. § 1391(d).

6.     This Court has personal jurisdiction over the Defendants because they personally and/or through agents were engaged in a criminal conspiracy within and targeting the United States, including trafficking vast quantities of FARC supplied cocaine into the United States and generating hundreds of millions of dollars of narcotics proceeds enabling the FARC's shoot down and targeting of U.S. nationals and the shootdown, kidnapping, torture and murder of plaintiffs, committed in furtherance of the conspiracy with the Defendants.

7.     This Court has personal jurisdiction over defendants because, in light of defendants' contacts with the United States as a whole, exercising jurisdiction over the defendants in the United States (including in this district) is consistent with the United States Constitution where they have engaged in a decades long conspiracy to flood the United States with cocaine, and providing weapons, safe haven, logistics, money and material support to a designated FTO that targeted American citizens and aircraft.

8.     Defendants' torts and acts of international terrorism against Thomas Janis were inextricably intertwined with, and a necessary and foreseeable component of, Defendants' trafficking of illegal drugs and money laundering into and throughout Alabama and the United States for their profit and gain.

9.     This Court has personal jurisdiction over defendants served because, in light of defendants' contacts with the United States as a whole, exercising jurisdiction over the defendants in the United States (including in this district) is consistent with the United States Constitution. Defendants themselves and/or through agents provided material support and aided and abetted terrorist and narco-terrorist acts of the FARC and others in or directed at the United States or U.S. nationals, giving rise to Plaintiffs' claims.

10.     In the alternative, this Court has personal jurisdiction over the defendants under Fed. R. Civ. P. 4(k)(2) because the defendants (a) are not subject to jurisdiction in any state's courts of general jurisdiction and (b) exercising jurisdiction over the defendants in the United States, including in this district, is consistent with the United States Constitution.

11.     To the extent that this Court requires an additional basis to exercise jurisdiction over any of Plaintiffs' claims against any particular Defendant, this Court may exercise pendant personal jurisdiction to the maximum extent permitted by the Constitution over such claims because Plaintiffs' claims all arise from the same common nucleus of operative fact.

12.     This action does not allege any claims seeking imprisonment or criminal punishment against any defendant, nor does any defendant face any loss of liberty in this civil action, nor is any defendant entitled to provision of counsel in this civil action under the Criminal Justice Act, 18 U.S.C. § 3006A, or the 6th Amendment to the U.S. Constitution.

13.     Defendants, as members of a decades long narcotics conspiracy with the FARC, are all jointly and severally liable for the multiple acts of international terrorism committed by their co-conspirator, and Cartel of the Suns fellow member FARC, in shooting down a U.S. counter-narcotics aircraft and targeting the American pilot and crew in furtherance of the conspiracy.

14.     Defendants had fair warning and knew that their continuing support of and conspiring with anti-American terrorist groups like the FARC could subject them to the jurisdiction of the U.S. for civil liability.

15.     Defendants' decision to purposefully provide material support and resources to anti-American FTOs, like the FARC, and the fact that the Plaintiffs' injuries, captivity and death

arose out of terrorist activities, enabled Defendants to "reasonably anticipate being haled into" a U.S. court.

16.    Defendants purposefully directed support to the FARC that targeted U.S. citizens and each is therefore subject to the personal jurisdiction of this Court compatible with the notions of fair play and substantial justice.

## II. <u>THE PLAINTIFFS</u>

17.    THOMAS JANIS, deceased, was a citizen of the United States residing in Montgomery County, Alabama at the time the CARTEL OF THE SUNS member FARC murdered him on February 13, 2003.  THOMAS JANIS was a retired U.S. Army aviator and member of the U.S. Army's Special Mission Unit - Delta Force, who retired from the U.S. military after 32 years, and was the recipient of the Bronze Star and the Air Medal with Combat Distinguishing Device for Valor.  THOMAS JANIS  was inducted into the U.S Army Aviation Hall of Fame in 2023.  The Honorable Senator Richard Shelby (retired) wrote Janis' recommendation.   THOMAS JANIS was survived by his wife Judith Janis (who died on March 4, 2025) and four children, CHRISTOPHER, MICHAEL and JONATHAN JANIS, and Greer Janis (who died in 2016).

18.     Plaintiff CHRISTOPHER  JANIS is a U.S. citizen and the surviving son of Thomas Janis.  Christopher Janis recently retired from active duty with the United States Army, after serving multiple combat tours as a U.S. Army Aviator, and currently resides in Dadeville, Alabama.

19.    Plaintiff MICHAEL JANIS is a U.S. citizen and the surviving son of Thomas Janis. Michael Janis recently retired from active duty with the United States Army as after serving multiple combat tours as a U.S. Army Aviator, and currently resides in Colorado.

20.     Plaintiff, JONATHAN  JANIS is a U.S. citizen and the surviving son of Thomas Janis currently residing in California.

21.     Plaintiff MARC GONSALVES is a U.S. citizen residing in Florida. Marc Gonsalves is former United States Air Force electronic surveillance systems specialist and was the chief counter narcotics analyst and intelligence officer on the February 13, 2003 flight.   MARC GONSALVES was held hostage and tortured for over 5 and ½ years (1,967 days).

22.     Plaintiff THOMAS HOWES is a U.S. citizen residing in Florida. Thomas Howes was the second in command pilot on the February 13, 2003 flight.  THOMAS HOWES was held hostage and tortured for over 5 and ½ years (1,967 days).

23.     Plaintiff KEITH STANSELL is a U.S. citizen residing in Florida.   Keith Stansell is a former United States Marine and was the mission commander for the February 13, 2003 flight. KEITH STANSELL was held hostage and tortured for over 5 and ½ years (1,967 days).

### III. THE DEFENDANTS & FACTS COMMON TO ALL COUNTS

#### *The Cartel of the Suns, its Leaders & Members*

24.     Defendant THE CARTEL OF THE SUNS is a criminal narco-terrorist organization operating worldwide, with its leaders comprised of senior figures in the Venezuelan military, government, and business community.  Defendants are a "terrorist party" as defined in Section 201(d) of the Terrorism Risk Insurance Act ("TRIA"), codified as a note to 28 U.S.C. § 1610, because they engaged in terrorist activity and are therefore "a terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi)))."

25.     Members of the Venezuelan military became involved in the drug trade in 1990s, largely in the form of accepting bribes to ignore drug traffickers.  Around 1992, Hugo Chavez formed a Venezuela drug cartel, which at the time was known as the "Cartel Bolivariano" or "Bolivarian Cartel."  In 1993, the name changed to the "Cartel of the Suns," a reference to the sun insignia on the Venezuelan military uniforms of many of the cartel's leaders.

26. The Venezuelan government under Hugo Chavez grew the cartel, affording Venezuelan officials engaged in drug trafficking immunity in exchange for their loyalty to Chavez. In 2005, the Chavez government expelled the U.S. Drug Enforcement Agency (U.S. DEA) from Venezuela, making Venezuela a more attractive route for drug trafficking. As discussed further below, the Cartel of the Suns began coordinating with FARC to traffic cocaine. Venezuelan air force bases began to shelter planes loaded with FARC cocaine.

27. When Chavez died in 2013, Maduro stepped up to become one of the leaders of the Cartel.

28. A Washington Post article captures the essence of the Maduro Regime: "the reality is that the [Venezuelan] regime is less a government — much less a socialist one — than a criminal gang," in which "the money it is reaping from criminal activity is serving as a prop that allows it to survive U.S. sanctions."[1]

29. Defendant NICOLAS MADURO MOROS is the former President of Venezuela. On July 31, 2017, the U.S. Department of Treasury, Office of Foreign Assets Control ("OFAC") sanctioned Maduro for "undermining democracy in Venezuela."[2]

30. On March 26, 2020, the Department of Justice unsealed a criminal indictment against Maduro, pending in the United States District Court for the Southern District of New York, for orchestrating a decades long "corrupt and violent narco-terrorism conspiracy between the between the Venezuelan Cartel de Los Soles ('Cartel of the Suns') and the Fuerzas Armadas

---

[1] https://www.washingtonpost.com/opinions/global-opinions/the-real-reason-venezuelasmaduro-survives-dirty-money/2019/05/12/ba96413e-7263-11e9-8be0ca575670e91c_story.html.
[2] *See* Press Release, U.S. Dep't of the Treasury, Treasury Sanctions the President of Venezuela, ¶ 1 (July 31, 2017), available at https://www.treasury.gov/press-center/pressreleases/pages/sm0137.aspx.

Revolucionarias de Colombia ('FARC')."[3]  Maduro is a citizen and resident of Venezuela, where (although he has no recognized or lawful government position) he openly and notoriously controls the country, flouts U.S. authority, and remains a fugitive from justice.  The U.S. Department of State, through its Narcotics Rewards Program, is offering rewards of up to $25 million for information leading to the arrest and/or conviction of Maduro.  **Ex. 1**.

31    Defendant CARTEL OF THE SUNS is a Venezuelan is a criminal narco-terrorist organization involved in terrorism, narco-terrorism, drug trafficking and money laundering.  Maduro—along with several others— controls the Cartel of the Suns.  The DOJ has explained that "Maduro," including through his leadership of the Cartel, "expressly intended to flood the United States with cocaine in order to undermine the health and wellbeing of our nation."[4]

32.    Defendant Cartel of the Suns is an unincorporated association based in Venezuela, but its criminal enterprises transcends international boundaries and is global in reach.  Several senior members of the Cartel of the Suns have been incarcerated in the United States, including (Former) Major General Cliver Alcala Cordones, a Cartel leader (sentenced to 260 months in prison for providing weapons and material support to the FARC helping the FARC flood the U.S. with

---

[3] *See* Superseding Indictment, ¶ 1 *United States v. Maduro*, 11-cr-205 (S.D.N.Y. 2011) ("Maduro Indictment"), available at https://www.justice.gov/opa/page/file/1261806/download.

[4] *See* Press Release, U.S. Dep't of Justice ("DOJ"), Nicolás Maduro Moros and 14 Current and Former Venezuelan Officials Charged with Narco-Terrorism, Corruption, Drug Trafficking and Other Criminal Charges, ¶ 3 (March 26, 2020) ("DOJ Press Release"), available at https://www.justice.gov/opa/pr/nicol-s-maduro-moros-and-14-current-andformer-venezuelan-officials-charged-narco-terrorism.

cocaine);[5] and Efraín Antonio Campo Flores and Francisco Flores de Freitas, both nephews of Maduro's wife (convicted of conspiracy to import 770 kilos of cocaine to the United States).[6]

33.    Cartel leader Vladimir Padrino Lopez is the *de facto* Minister of Defense of Venezuela. On September 25, 2018, OFAC imposed US sanctions on Padrino Lopez, explaining that Padrino Lopez is "a member of [Maduro's] inner circle and lifelong member of the Venezuelan military," who Maduro installed "to help ensure the military's loyalty to the Maduro regime."[7] Padrino Lopez was indicted in the United States District Court for the District of Columbia.[8]  The indictment alleges that from March 2014 until May 2019, Padrino Lopez conspired with others to distribute cocaine on board an aircraft registered in the United States, utilizing his position as Venezuelan "Minister of Defense" to facilitate the movement of air shipments of cocaine from Venezuela to Central America.  Padrino López charged drug transportation organizations a protection fee to allow these drug laden aircraft safe passage out of Venezuela.  Padrino Lopez is a senior member of the Cartel of the Suns.  Padrino Lopez remains a fugitive from justice.

34.    Cartel leader Nestor Luis Reverol Torres has held many government positions in Venezuela.  He is the former general director of Venezuela's La Oficina Nacional Antidrogas ("ONA"), which is the Venezuela government agency charged with fighting narcotics production and trafficking (its mission is similar to that of the Drug Enforcement Agency in the United States).  On July 26, 2017, OFAC imposed sanctions on Torres for "undermining democracy" in

---

[5] https://www.justice.gov/usao-sdny/pr/former-venezuelan-general-sentenced-260-months-prison-providing-material-support-farc

[6] https://www.justice.gov/usao-sdny/pr/nephews-venezuela-first-lady-each-sentenced-18-years-prison-conspiring-import-cocaine

[7] *See* Press Release, U.S. Dep't of the Treasury, Treasury Targets Venezuela President Maduro's Inner Circle and Proceeds of Corruption in the United States (Sept. 25, 2018), ¶ 5, available at https://home.treasury.gov/news/press-releases/sm495.

[8] *See* Indictment, *United States v. Vladimir Padrino Lopez,* 1:19-cr-176 (D.D.C. 2019), available online at https://www.justice.gov/opa/page/file/1261721/download.

Venezuela.[9]    In 2016, the DOJ unsealed an indictment against Torres for offenses including trafficking and distributing cocaine.[10]    Reverol Torres is a senior member of the Cartel of the Sun and a fugitive from justice.

35.    Cartel leader Tarek William Saab is the Attorney General (sometimes called the Prosecutor General) of Venezuela.    On July 26, 2017, he was sanctioned by OFAC for undermining democracy in Venezuela.[11]    He has been sanctioned by other countries, such as Switzerland, for human rights violations.

36.    Defendant TARECK ZAIDAN EL AISSAMI MADDAH was the de facto Vice President of Venezuela from 2017 to 2018. On February 13, 2017, OFAC sanctioned El Aissami under the Foreign Narcotics Kingpin Designation Act for facilitating drug shipments from Venezuela to the United States individually and as part of the El Aissami Lopez Bello Money Laundering Network.[12]    He is also the key facilitator of the Maduro Regime's support for Hezbollah.[13] In 2014 Robert Morgenthau, then the Manhattan District Attorney, indicated that El Aissami had provided Venezuelan passports to terror organizations including Hamas and

---

[9] *See* Press Release, U.S. Dep't of Treasury, Treasury Sanctions 13 Current and Former Senior Officials of the Government of Venezuela, ¶ 1 (July 26, 2017) ("July 26, 2017 OFAC Press Release") available at https://www.treasury.gov/press-center/pressreleases/Pages/sm0132.aspx.

[10] *See* Indictment, *United States v. Torres*, 15-cr-20 (E.D.N.Y. Jan. 21, 2015), available at https://www.justice.gov/doj/page/file/1261891/download.

[11] *See* July 26, 2017 OFAC Press Release, *supra* n. 13.

[12] *See* Press Release, U.S. Dep't of Treasury, Treasury Sanctions Sanctions Prominent Venezuelan Drug Trafficker Tareck El Aissami and His Primary Frontman Samark Lopez Bello, ¶ 1 (Feb. 13, 2017), available at https://www.treasury.gov/press-center/press-releases/pages/as0005.aspx

[13] *See* Florencia Montaruli, *Tareck El Aissami: Hezbollah's Biggest Benefactor in Venezuela*, Iran Wire (May 4, 2021), available at https://iranwire.com/en/features/9471.

Hezbollah.[14]  He is on the U.S. Customs and Immigration Enforcement's 10 most wanted list and has a $10 million reward for his capture.  **Ex. 2**.

37.    Defendant Tareck El Aissami was the former Governor of the State of Aragua in Venezuela.  As governor, he established a para-military organization to facilitate Cartel of the Suns transport, transshipment, security and distribution of FARC cocaine and weapons.  This violent paramilitary organization expanded to what is now known as "El Tren de Aragua" ("TdA"):

> TdA is a transnational organization that originated in Venezuela with cells in Colombia, Peru, and Chile, with further reports of sporadic presence in Ecuador, Bolivia, and Brazil. This brutal criminal group has conducted kidnappings, extorted businesses, bribed public officials, authorized its members to attack and kill U.S. law enforcement, and assassinated a Venezuelan opposition figure.

TdA is present in the United States and on February 20, 2025, the U.S designated TdA as a Foreign Terrorist Organization and a Specially Designated Global Terrorist ("SDGT").[15]  El Tren de Aragua is a member of the Cartel of the Suns.  Tareck El Aissami is a citizen and resident of Venezuela and a senior member of Cartel of the Suns and remains a fugitive in SDNY Case No. 19-cr-00144.

### *The Cartel of the Suns Member FARC*

38.    FARC was established in 1964, as the military wing of the Colombian Communist Party.

39.    The FARC are terrorists who engage in international terrorism, including premeditated, politically motivated violence, threats of violence, hostage takings, bombings, murders and other terrorist related activities perpetrated against noncombatant targets including

---

[14] *See* ICE: Former Venezuelan VP Among 10 Most Wanted Fugitives, NBC Miami (July 31, 2019), available at https://www.nbcmiami.com/news/local/former-venezuelan-vice-president-tareck-el-aissami-most-wanted-ice/125106/.

[15] https://www.state.gov/designation-of-international-Cartels/#:~:text=Organizations%20(FTOs)%20and,Venezuelan%20opposition%20figure.

U.S. nationals.  The FARC directs terrorist activities across national and international borders in order to influence U.S. and other nations' policy.

40.     The FARC are strongly anti-American, have specifically targeted American citizens, and have engaged in violent acts against Americans.

41.     The FARC issued public statements in English and Spanish conveying anti-American views, marking Americans as targets, and condemning the policies of the United States.

42.     On October 8, 1997 the Secretary of State of the United States, designated the FARC designated foreign terrorist organization (FTO), pursuant to Title 8, United States Code, Section 1189.  Specifically, 8 U.S.C. § 1189(a)(1) authorizes the Secretary of State to designate an organization as a foreign terrorist organization . . . if the Secretary finds that (A) the organization is a foreign organization; (B) the organization engages in terrorist activity . . . ; and (C) the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States. 8 U.S.C. § 1189(a)(1).

43.     The FARC was re-designated on September 5, 2001, and remained a designated FTO from 2003 through 2008 at the times it committed the acts of terrorism against Plaintiffs, including the aircraft shoot down, murder, hostage taking and torture, all during the FARC's narco-terrorism conspiracy with and as a member of the Cartel of the Suns.

44.     Title 8 U.S.C. § 1189(7) states that "[t]he revocation of a designation under paragraph (5) or (6) shall not affect any action or proceeding based on conduct committed prior to

the effective date of such revocation." The FARC is also a Specially Designated Global Terrorist ("SDGT") under IEEPA Executive Order 13224.[16]

45.    On February 13, 2003, plaintiffs were conducting a counter narcotics surveillance mission in a U.S FAA registered aircraft when the FARC opened fire on the aircraft. Post-crash investigation revealed the FARC had hit the aircraft with heavy machine gun fire before it had crash landed.

46.    FARC members have admitted that the FARC had intentionally fired at the aircraft to shoot it down, and capture its crew, knowing that it was a U.S. aircraft and U.S. national crew on-board.

47.    All five occupants of the plane survived a crash landing, but were immediately taken captive by FARC terrorists who quickly located the downed plane. The American pilot, Thomas Janis, and the Colombian soldier, Luis Alcides Cruz, were kidnapped, marched a short distance from the aircraft and then shot and killed by FARC members. Their bodies were left a short distance from the crashed plane. The other three Americans, Keith Stansell, Marc

---

[16] The FARC have never ceased to be a terrorist party as defined under TRIA. Under federal common law principles of "successor liability," they remain liable based on the many FARC Fronts, leaders and fighters that never laid down arms in 2016—or who did so initially and have now rejoined their FARC units—and which continue engaging in narco-trafficking and terrorist activity to this date. These FARC dissident Fronts, units and leaders who remain active demonstrate that the FARC remains a "terrorist" party as defined in 8 U.S.C. § 1182(a)(3)(B)(vi)(III) ("[G]roup of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the [terrorist] activities . . . ."). The most obvious example is the SDNY 2020 "Cartel of the Suns" narcotics trafficking  indictment of Venezuelan President Nicolas Maduro and FARC fugitive leaders "Jesus Santrich" (killed in 2021) and "Ivan Marquez" (who remains at large commanding a FARC Front in Colombia/Venezuela). *See* Superseding Indictment, *United States v. Nicolas Maduro Moros et al.*, No. 1:11-cr-205-AKH (S.D.N.Y. Mar. 3, 2020), Doc. No. 11. Even the Secretary of State's 2021 revocation of the FARC's FTO designation acknowledges these facts with its simultaneous new designation of the successor entity now called FARC-EP, and the re-designation as SDGTs of several FARC-EP leaders.

Gonsalves, and Thomas Howes were seized by force, taken hostage, and marched into the jungle by FARC members, where they were held captive for 1,967 days until their rescue July 2, 2008.

48.    The decedent, Thomas Janis was a retired United States Army Aviator assigned to a Special Mission Unit having served his last tour of duty before retirement as a Chief Warrant Officer Five member and Commander of Fixed Wing elements for Special Forces Operational Detachment Delta.  Following his 1998 military retirement, Thomas Janis was employed as a civilian flying reconnaissance and surveillance missions in Colombia in support of the global war against terrorism and narcotics trafficking.  Thomas Janis was inducted into the U.S. Army Aviation Hall of Fame in 2023.

49.    About two months after the plane crash, on April 27, 2003, the FARC issued a public communique taking credit for seizing and holding the three Americans hostages.   In that public letter, published to the United States, the FARC offered to release approximately 250 high level Colombian citizens that it was then holding hostage, together with the three Americans captured on February 13, 2003, in exchange for certain political concessions from the Colombian government and to illegally influence the policy of the United States.  The FARC demanded that the Colombian government carve out of its sovereign territory a demilitarized zone (DMZ), which would be used as a new base of operations for the FARC, and release hundreds of FARC terrorists currently held by Colombia, as a condition for the release of the three American hostages.

50.    In July 2003, the FARC forced the Plaintiffs, Keith Stansell, Marc Gonsalves, and Thomas Howes to participate in a videotaped interview to prove that they were alive and being held by the FARC.  A FARC senior leader Mono Jojoy, told the plaintiffs, Keith Stansell, Marc Gonsalves, and Thomas Howes that the FARC Commander "has ordered us . . . to send a proof of life to your families."  The Plaintiffs' families lived inside the United States.  The "proof of

life" was delivered to CBS News, an American media organization in New York and aired throughout the U.S.

51.    The FARC demanded, in a form of communication published in the U.S., the release of two convicted FARC terrorists in the U.S. or the FARC would kill, injure, and continue to forcibly detain the plaintiffs.

52.    The FARC acts were intended to intimidate or coerce the U.S. civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by kidnapping, hostage taking and assassination.

53.    The FARC conspired to and did shoot down a U.S. aircraft, kidnap U.S. citizens, or kill them, and to then hold them captive and broadcast their photographs worldwide for the express purpose of inflicting terror on U.S. citizens and attempting to influence U.S. and Colombian government policy.

54.    Defendants individually and collectively had fair warning and knew that the activities of their Cartel members, including the FARC, would subject them to the jurisdiction of the U.S. for criminal and civil liability.

55.    The Defendants' decision to purposefully direct their terror at the U.S., and the fact that the plaintiffs' injuries, captivity and death arose out of terrorist activities, should suffice to cause the defendants, to "reasonably anticipate being haled into" a U.S. court.

56.    Defendants' provision of material support enabled its Cartel of the Suns member FARC to commit acts of international terrorism including the following acts of the FARC:

a)    targeted American persons and companies;

b)    engaged in 2 way radio communications to inform each other about the presence of the Plaintiffs' aircraft in the area of the FARC's Teofilo Forrero Mobile Column's area of operations;

c)    obtained permission to attack the aircraft which the FARC knew carried U.S.

nationals;

d)  attacked the aircraft using firearms in acts of aircraft sabotage and seized as hostages U.S. nationals once the aircraft had crash landed;

e)  shot and killed a U.S. national - pilot of the downed aircraft;

f)  shot and killed a Colombian soldier who was part of the crew of the downed aircraft;

g)  destroyed and burned the downed aircraft and its equipment;

h)  forced the plaintiffs away from the aircraft crash site using armed force and deadly force and took them hostage;

i)  repeatedly transported the plaintiffs to remote areas away from the site of the hostage taking using armed force and deadly force, with their necks chained for long marches through dense jungle terrain;

j)  detained the hostages under armed guard and threat of death at various locations in the jungle;

k)  assigned specific FARC members to execute plaintiffs in the event a rescue attempt was committed;

l)  performed sadistic jungle medical procedures on plaintiffs when they were injured;

m)  starved the plaintiffs for long periods;

n)  chained the plaintiffs with truck chains;

o)  demanded that the Colombian government create a demilitarized zone and conduct an exchange of prisoners with the FARC as explicit conditions for the release of the plaintiffs/hostages;

p)  prepared and published forced proof of life videos which were aired in the United States;

q)  named senior commanders, with expertise in negotiations to represent the FARC in negotiations with the Colombian government for the release of U.S. plaintiffs/hostages held by the FARC;

r)  obtained false and fraudulent identification documents to facilitate participation in the negotiations of FARC demands for release of the U.S. plaintiffs/hostages;

s)  concealed the location of the plaintiffs/hostages;

t)  subjected the plaintiffs/hostages to cruel and inhumane conditions resulting in disease, illness, mental and physical injury and trauma;

u)  denied the plaintiffs/hostages adequate food and medical care;

v)  forced the plaintiffs to undergo repeated "mock" executions;

w)  solicited and received material support from various persons and foreign companies doing business in Colombia, Venezuela, and other countries outside of Colombia, including payment of protection money, and supplies, transportation, logistics, medical care and treatment and safe haven for FARC terrorists;

x)  solicited and received financial support from various foreign banks and non-bank financial institutions, money launderers, money changers, foreign citizens and persons of interest, non-governmental groups and charities, front companies including money laundering of proceeds of the Cartel of the Suns' criminal activities, and other banking and financial transaction services to support the the Cartel of the Suns ongoing hostage taking, captivity and narcotics trafficking;

y)  availed itself of the U.S. banking system through foreign banks, non-bank financial institutions, money changers and launderers, U.S. and foreign persons with foreign accounts or privileges to use clearing accounts to send, direct, divert, and disguise, financial support for terrorist activities, murder, hostage taking, support of hostages in captivity and the terrorist who guard the hostages, operate communications and shadow local governments, and establish logistics and supply lines for illegal activities, including narcotics trafficking.

## IV.   *THE ACTS OF INTERNATIONAL TERRORISM*

57.    The Cartel of the Suns member FARC's acts of intentionally shooting at the U.S. civilian aircraft to bring it down constitutes an act of "aircraft sabotage" under 28 U.S.C. §1605A(h)(1).

58.    The Cartel of the Suns member FARC's acts of detaining the hostage Plaintiffs, and repeatedly threatening to kill, injure or continue to detain them, in order to compel the Colombian and U.S. governments to release prisoners, or abstain from further action, constitutes an act of "hostage taking" under 28 U.S.C. §1605A(h)(2).

59.     The Cartel of the Suns member FARC's murder of Tom Janis, and the neck chaining, forced jungle marches, captivity and other acts of physical and mental cruelty to the hostage Plaintiffs, constitute acts of "extrajudicial killing" or "torture" under 28 U.S.C. §1605A(h)(7)

60.     Defendants committed acts and did knowingly combine, conspire, confederate and agree, together, with each other, and with others, known and unknown to engage in acts of international terrorism against U.S. nationals, terrorism, and terrorist activity, including murder and hostage taking, violence and acts dangerous to human life and to provide material support and resources and financial support to a designated foreign terrorist organization, namely the FARC, knowing that the organization was designated as a terrorist organization, has engaged or engages in terrorist activity, and has engaged or engages in terrorism.  The material support also included proceeds from illegal narcotics and hostage and kidnapping activities. The defendants' acts of international terrorism transcend national boundaries and are committed to coerce or intimidate the policy of the U.S. and Colombia.

61.     Pursuant to their 2004 federal grand jury indictment, the Cartel of the Suns member FARC earned over $25 billion of U.S. currency as a result of their ongoing narco-trafficking activities.  *United States v. Marin et al.*, D.D.C. Case No. 1:04-cr-00446, ECF 9.

62.     The Cartel of the Suns members have conspired and agreed to commit a wide variety of interrelated crimes, including (a) narcotics trafficking; (b) acts of terrorism including but not limited to narco-terrorism; (c) human rights violations including kidnapping, torture, and murder; (d) public corruption offenses; and (e) money laundering.

63.     Each of the Cartel of the Suns' criminal endeavors is intrinsic to, and necessary to the functionality of, the overall criminal organization/enterprise.  Put differently, each line of

criminal wrongdoing supports and reinforces the ability of the Cartel to commit each of the other criminal wrongdoing in which the Maduro Criminal Enterprise engages.

> For example, a central objective of the Cartel of the Suns is to assist Maduro to retain authoritarian control over Venezuela. By ensuring that Maduro unlawfully controls the Venezuelan state, the Cartel ensures that it can continue to commit profitable crimes—such as narcotics trafficking and looting the Venezuela treasury—with impunity and without interference from legitimate law enforcement.

> Conversely, the Cartel, through its earnings from profitable crimes such as narcotics trafficking and public corruption, obtains wealth through which Maduro purchases the loyalty of Cartel leaders and loyalists, thereby cementing Maduro's authoritarian control over Venezuela. In other words, dirty money is the lifeblood of the Cartel of the Suns conspiracy. As the Washington Post explains, "each year [the Cartel of the Suns] flies hundreds of tons of Colombian cocaine from Venezuelan airfields to Central America and the Caribbean for eventual distribution in the United States and Europe — and that [cartel] includes some of the most senior officials in the Maduro regime. These men are not clinging to power because they are true believers in socialism . . . . They hang on because, in spite of Venezuela's economic implosion, they are still reaping millions."[17]

64.    Because the foregoing crimes are interrelated, because each type of criminality furthers the other types of criminality, and because the Cartel conspicuously engages in each type of criminality, each and every co-conspirator in the Cartel of the Suns conspiracy has knowingly and intentionally agreed to all types of criminality in which the Cartel engages.

65.    The key lines of criminal conduct in which the Cartel of the Suns engages are discussed in more detail below.

66.    For at least 20 years, and continuing through today, Maduro, along with a cadre of his Venezuelan loyalists and the FARC, has run a vast narcoterrorism conspiracy – the Cartel of the Suns - and through it, has intentionally inundated the United States with cocaine, not only to enrich Maduro himself along with the other members of the Cartel, but also to harm the United States and its citizens.

---

[17] *See* Congressional Research Service, *Venezuela, Background and U.S. Relations* (April 28, 2021), at 5, available online at https://fas.org/sgp/crs/row/R44841.pdf.

67.    On March 26, 2020, the DOJ unsealed indictments charging myriad crimes against Maduro, other Venezuelan leaders, and its member FARC, for narcotics trafficking and narcoterrorism.  Summing up the charges, U.S. Attorney General William P. Barr explained that "[t]he Venezuelan regime, once led by Nicolás Maduro Moros, remains plagued by criminality and corruption. . . .  For more than 20 years, Maduro and a number of high-ranking colleagues . . . conspired with the FARC, causing tons of cocaine to enter and devastate American communities."[18]

68.    Cartel leader Diosdado Cabello Rondón is currently Nicolás Maduro Moros' so-called minister of interior, justice, and peace, having oversight over Venezuela's police forces and prisons.  Cabello Rondón has also served as the former president of Venezuela's Constituent National Assembly, President and Vice-President of Venezuela, and is an active member of the Venezuelan armed forces with the rank of Captain.  According to the Department of Justice, Cabello Rondón participated in the narco-terrorism conspiracy between the Cartel of the Suns and the FARC.  "Cabello Rondón coordinated with the FARC in furtherance of the narco-terrorism conspiracy in order to transport and distribute large cocaine shipments; benefit from, and cause others to participate in, the provision of heavily armed security to protect the cocaine shipments; cause large quantities of previously-seized cocaine to be sold to drug traffickers in exchange for millions of dollars; interfere with drug-trafficking investigations and pending criminal cases in Venezuela and elsewhere; and help provide the FARC with military-grade weapons, including machine guns, ammunition, rocket

---

[18] *See* DOJ Press Release, *supra* n. 4, ¶ 1.

launchers, and explosives equipment."[19]    Diosdado Cabello remains a fugitive from indictment with a $25 million reward for information leading to his capture. **Ex. 3**.

69.    The United States Attorney for the Southern District of New York, Geoffrey S. Berman, further explained how Maduro and his cronies leveraged their authoritarian power in Venezuela to support their narcoterrorism and narcotics trafficking conspiracy:

> Today we announce criminal charges against Nicolás Maduro Moros for running, together with his top lieutenants, a narcoterrorism partnership with the FARC for the past 20 years. . .   ***The scope and magnitude of the drug trafficking alleged was made possible only because Maduro and others corrupted the institutions of Venezuela and provided political and military protection for the rampant narco-terrorism crimes described in our charges***.  As alleged, Maduro and the other defendants expressly intended to flood the United States with cocaine in order to undermine the health and wellbeing of our nation.   Maduro very deliberately deployed cocaine as a weapon.  While Maduro and other cartel members held lofty titles in Venezuela's political and military leadership, the conduct described in the Indictment wasn't statecraft or service to the Venezuelan people.  As alleged, the defendants betrayed the Venezuelan people and corrupted Venezuelan institutions to line their pockets with drug money.[20]

70.    Attorney General Barr further explained the role of FARC in the conspiracy: "They have obtained the support of the Maduro regime, which is allowing them to use Venezuela as a safe haven from which they can continue to conduct their cocaine trafficking and their armed insurgency."[21]

---

[19] https://2021-2025.state.gov/bureau-of-international-narcotics-and-law-enforcement-affairs/releases/2025/01/diosdado-cabello-rondon.

[20] *Id.* ¶ 3.

[21] *See* Press Release, Dep't of Justice, Attorney General William P. Barr Delivers Remarks at Press Conference Announcing Criminal Charges against Venezuelan Officials (March 26, 2020) ("AG Barr Remarks") available at https://www.justice.gov/opa/speech/attorneygeneral-william-p-barr-delivers-remarks-press-conference-announcing-criminal; *see also*  Douglas Farah and Caitlyn Yates, *MADURO'S LAST STAND Venezuela's Survival Through the Bolivarian Joint Criminal Enterprise with the FARC*, IBI Consultants LLC ((May 2019) ("The alliance of the [Maduro Regime] together w/ the FARC have coalesced into . . . a consortium of criminalized

71. Attorney General Barr further explained: "There is an area right on the border in Colombia, Norte de Santander, which is one of the primary cocaine producing areas remaining in Colombia. FARC gets this cocaine over into Venezuela and then is given safe haven by the regime to fly this cocaine from an area called Zulia, near Lake Maracaibo, up into Central America. Since 2016, this air bridge has been established and has grown fivefold in just those four years. In addition, the regime is allowing these drug traffickers to take drugs by a maritime route into the Caribbean. We estimate that somewhere between 200 and 250 metric tons of cocaine are shipped out of Venezuela by these routes per year."[22] **Ex. 4.**

72. As set forth in the Maduro indictment, a member of the FARC high command "agreed to provide a multi-ton quantity of cocaine to DEA confidential sources so that the drugs could be imported into the United States. The sources purported to work for Rafael Caro Quintero, a Mexican drug trafficker who participated in the 1985 torture and murder of DEA Agent Enrique 'Kiki' Camarena. During a recorded meeting, [the FARC leader] referred to the murder of Camarena by characterizing Caro Quintero as the person who had killed the 'son of the bitch of the DEA.'"[23]

73. U.S. Attorney Berman explained the role of the Cartel of the Suns in the conspiracy. He stated that Maduro and the Individual Defendants "called their cartel the 'Cartel of the Suns.' The name they chose reflects the Cartel's identity and operations. It is a direct reference to the sun-shaped stars that Venezuelan military officers wear on their uniforms. Indeed, three former military officers of the highest rank are charged in this indictment. At the direction of Maduro, and in pursuit of their own personal profits, these

---

states and non-state actors working in concert with shared objectives"), available at https://www.ibiconsultants.net/_pdf/maduros-last-standfinal-publication-version.pdf.

[22] *See* AG Barr Remarks, *supra* n. 20.

[23] Maduro Indictment, *supra* n. 3, at ¶ 15(p).

officers: negotiated drug sales; protected the FARC's transportation of coca leaves from Colombia; provided safe haven in Venezuela for cocaine manufacturing facilities; and supplied authorization codes and cover for the planes and boats that transported the shipments as they began their journey to the United States."[24]

74.    Assistant Attorney General Brian A. Benczkowski explained the role of Defendant Padrino Lopez in the narcotrafficking conspiracy:  "[The Venezuelan] military—led by Padrino Lopez—was responsible for interdicting suspected drug traffickers flying through Venezuelan air space.  But as Minister of Defense, Padrino Lopez instead wielded his power to allow drug traffickers to use Venezuela as a transshipment route for narcotics destined for the United States.  Padrino Lopez allegedly accepted bribes from drug trafficking organizations to allow them free passage to fly through Venezuelan air space.  So long as he was paid off, cocaine-filled aircraft could get by and avoid interdiction.  Far from stopping drug traffickers, the military – for the right price – gave safe passage to drug traffickers, terrorists, and other criminals."[25]

75.    The United States Attorney's Office for the Eastern District of New York has charged Defendant Torres (the former general director of Venezuela's DEA),  for his role in the Maduro Criminal Enterprise's narcotics trafficking.  According to the indictment, Torres "receive[d] payments from narcotics traffickers in exchange for assisting the narcotics traffickers in conducting their illicit drug trafficking business."   In exchange for payments

---

[24] *See* Press Release, Dep't of Justice, U.S. Attorney Geoffrey S. Berman Announces Charges in *U.S. v. Maduro et al*. New York, N.Y. (March 26, 2020) available at https://www.justice.gov/opa/page/file/1262756/download.

[25] *See* Press Release, Dep't of Justice, Assistant Attorney General Brian A. Benczkowski Delivers Remarks at Press Conference Announcing Criminal Charges Against Venezuelan Officials (March 26, 2020) available at https://www.justice.gov/opa/speech/assistantattorney-general-brian-benczkowski-delivers-remarks-press-conference-announcing.

from narcotics traffickers, Torres, among other things, (a) alerted narcotics traffickers to future drug raids or locations of law enforcement counter-narcotics activities so that the narcotics traffickers could change the storage locations of narcotics or alter transportation routes or times and thus avoid detection by law enforcement; (b) stopped or hindered ongoing narcotics investigations or counter-narcotics actions so that vehicles loaded with narcotics could depart from Venezuela; (c) arranged for the release of individuals detained for narcotics violations or for suspicion of narcotics trafficking activities; (d) arranged for the release of seized narcotics or narcotics-related currency; and (e) prevented the arrest or deportation of individuals sought for prosecution in foreign countries, including the United States.

76.    In 2017, two of Maduro's wife's cousins, Efrain Antonio Campo Flores and Franqui Francisco Flores, were convicted of conspiracy to smuggle cocaine into the United States and sentences to 18 years in prison.  The Acting Manhattan U.S. Attorney explained that the crime was motivated, in part, by a desire to enhance Maduro's political power at home: "In part to fund an election campaign for the First Lady of Venezuela, Efrain Antonio Campo Flores and Franqui Francisco Flores de Freitas devised a plan to work with the FARC terrorist organization to send literally tons of cocaine to the United States."[26]

### *The Cartel's Acts of, and Material Support for, Terrorism*

77.    A defining feature of the Cartel of the Suns is the symbiotic relationship among its principal members: on one hand, Maduro, the apparatus of the Venezuelan state that he controls, and the Cartel of the Suns, and on the other hand, the Cartel member FARC.

---

[26] Press Release, U.S. Dep't of Justice, *Nephews Of Venezuela First Lady Each Sentenced To 18 Years In Prison For Conspiring To Import Cocaine Into The United States* (Dec. 14, 2017), available at https://www.justice.gov/usao-sdny/pr/nephews-venezuela-first-lady-eachsentenced-18-years-prison-conspiring-import-cocaine.

78.    As described above, FARC, Maduro and the Cartel of the Suns have worked hand in glove to perpetrate a massive, ongoing, highly profitable narcoterrorism conspiracy aimed at the United States.  But the collaboration goes much farther and deeper.   Venezuela also provides a safe haven for FARC.[27]  As a result, the FARC has taken over state functions in parts of Venezuela and has a vested interest in supporting the Maduro regime. Expansion into Venezuela has enabled the FARC to carry out attacks in Colombia and withstand blows from Colombian security forces.[28]

79.    In addition, Maduro provides high-end military grade weapons and munitions to FARC, such as shoulder-launched anti-tank weapons.[29]  Years ago, Maduro attended a meeting with a FARC representative at which the attendees agreed that the Cartel of the Suns would provide the FARC cash and weapons in exchange for increased cocaine production.[30]

80.    Conversely, at Maduro's request, FARC supplied training to unsanctioned militia groups (known as Colectivos or "Collectives") that function as an armed-forces unit for the Cartel of the Suns.[31]   The Colectivos engage in kidnapping, extortion, drug trafficking and murder.  They are associated with extrajudicial killings and terrorizing dissidents.

81.    Venezuela's democratically elected National Assembly has designated the Colectivos as terrorist groups due to their "violence, paramilitary actions, intimidation, murders and other crimes," declaring their acts to be nothing short of state-sponsored terrorism.  The

---

[27] Reuters Staff, *Amid Columbia Rebel Rearmament, U.S. Sees Support from Maduro* (Aug. 31, 2019), available at https://www.reuters.com/article/us-venezuela-politics-usa/amidcolombia-rebel-rearmament-u-s-sees-support-from-maduro-official-idUSKCN1VL0FZ.

[28] Ross Dayton, *Maduro's Revolutionary Guards: The Rise of Paramilitarism in Venezuela*, 12 CTC Sentinel 7,  (Aug. 2019) available at https://www.ctc.usma.edu/madurosrevolutionary-guards-rise-paramilitarism-venezuela/.

[29] *See* CNN, *Columbia: FARC Arms Traced to Venezuela*, July 27, 2009, available at http://www.cnn.com/2009/WORLD/americas/07/27/colombia.venezuela.arms/.

[30] Maduro Indictment, *supra* n. 3, ¶ 15f.

[31] *See* DOJ Press Release, *supra* n. 4, at ¶ 13.

Colectivos have attacked anti-government protesters and Venezuelan opposition television staff, sent death threats to journalists, and once even tear-gassed the Vatican envoy.

82.    In 2023, Clíver Alcalá, a former Venezuelan General and Cartel of the suns leader, plead guilty to supporting the FARC while acting on Hugo Chávez's orders from 2006 to 2013. Alcalá confessed to delivering grenade launchers and corresponding ammunition to figures such as Iván Márquez and Timochenko, former FARC leaders who have either complied with or betrayed the peace agreement with the Colombian government.  The evidence presented in the US trial also points to joint drug trafficking operations between the FARC and Caracas, including allegations of a $5 million bribe to Nicolas Maduro, who was then serving as foreign minister, in 2006.[32]

83.    On December 12, 2023, a federal jury found Carlos Orense Azocar, alias "El Gordo," guilty of leading a transnational drug trafficking network in which active military officials and high-ranking Venezuelan politicians participated.[33]  Orense Azocar was a member of the Cartel of the Suns and trafficked over 40 tons of cocaine per year with the support and protection of high-ranking government officials in the Cartel of the Suns, and in partnership with Cartel of the Suns member the FARC.[34]

84.    FARC's ongoing acts of international terrorism are not limited to collaborating with South American terrorists.  US Attorney Geoffrey S. Berman—unsealing the indictment of Adel El Zabayar, a member of the Cartel of the Suns—explained that: "As alleged, Adel El Zabayar was part of the unholy alliance of government, military, and FARC members using

---

[32] https://www.breakinglatest.news/news/the-trial-reveals-deep-connections-between-the-venezuelan-regime-and-former-farc-a-threat-to-colombian-security/.
[33] *United States v. Carlos Orenze Azocar*, S.D.N.Y. Case 21-cr-00379.
[34] *Venezuelan Officials Key in Convicted Drug Trafficker's Network*, InSight Crime December 21, 2023, https://insightcrime.org/news/venezuelan-officials-key-convicted-drug-traffickers-network/.

violence and corruption to further their narco-terrorist aims.  El Zabayar was allegedly a key part of the apparatus that conspired to export literally tons of cocaine into the U.S.  We further allege today, for the first time, that the *Cártel de Los Soles* sought to recruit terrorists from Hizballah and Hamas to assist in planning and carrying out attacks on the U.S., and that El Zabayar was instrumental as a go-between.  Allegedly, El Zabayar obtained from the Middle East a cargo planeload of military-grade weaponry."[35]

### *Money Laundering*

85.    This long-standing criminal cooperation between Cartel of the Suns members, FARC, the Venezuelan government, the Venezuelan military, is equally evident in Cartel members which are part of Venezuelan state-owned companies.  For example, Petroleos de Venezuela, S.A. ("PDVSA"), the state-owned oil company, is in a joint criminal enterprise to send cocaine to the United States and launder the proceeds through PDVSA's ownership and managing influences over its corporate, non-state subsidiaries in Venezuela and countries abroad. One example is Petrocedeno S.A.

86.    The Cartels money laundering apparatus through PDVSA and its subsidiaries  is vast and involves shipments, money transfers, and loans to third parties, as well as movements of monies within Venezuela and PDVSA and then abroad, including to the United States.  By mixing money generated by illicit activities – including the trade in Cartel member FARC cocaine, but also funds generated by their other crimes such as the kidnapping and ransom of individuals– with money generated by the sale of petroleum and related products, PDVSA and its corporate subsidiaries like Petrocedeno S.A. launder funds.  Even sellers of legitimate goods

---

[35] *See* Press Release, U.S. Dep't of Justice, Former Member Of Venezuelan National Assembly Charged With Narco-Terrorism, Drug Trafficking, And Weapons Offenses (May 27, 2020), available at https://www.justice.gov/usao-sdny/pr/former-member-venezuelannational-assembly-charged-narco-terrorism-drug-trafficking-and.

within PDVSA thereby are instrumental to and contribute to the PDVSA money-laundering enterprise by itself and through its corporate subsidiaries.  PDVSA and its corporate subsidiaries are members of the Cartel of the Suns.

87.    Multiple Petrocedeno officials have pled guilty to money laundering and bribery charges in the United States, including Lennys Rangel, Petrocedeno's former head of procurement, and Edoardo Orsoni, former general counsel to both PDVSA and Petrocedeno.[36]

## <u>COUNT ONE</u>

## <u>Violation of the Federal Anti-Terrorism Act 18 U.S.C. § 2333</u>

88.    Plaintiffs adopt and incorporate the allegations and facts contained in prior paragraphs and in allegations common to all counts as if fully set forth herein.

89.    Plaintiffs are all U.S. nationals injured by reason of an act of international terrorism and seeks damages under 18 U.S.C. § 2333.  Section 2333 provides:

> **"(a) Action and jurisdiction.--**Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees."
>
> \*        \*        \*
>
> **(d)(2) Liability**.--In an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

90.    Plaintiffs were all victimized by acts of "international terrorism" as defined by 18 U.S.C. § 2331(1) which states:

> "(1) the term "international terrorism" means activities that--

---

[36] *United States v. Ortega*, SDFL Case No. 1:18-cr-20685.

(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

(B) appear to be intended--
    (i) to intimidate or coerce a civilian population;
    (ii) to influence the policy of a government by intimidation or coercion; or
    (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum."

91.    On February 13, 2003, Cartel of the Suns member FARC opened fire on a U.S. registered aircraft as it was flying over southern Colombia on a U.S. Government counter-narcotics surveillance mission.  The plane was crewed by four U.S. nationals and one Colombian soldier.

92.    All five occupants of the plane survived a crash-landing, but were immediately taken captive by FARC terrorists who quickly located and continued to fire automatic weapons on the aircraft and crew of the downed plane.  The U.S national pilot, Thomas Janis, and the Colombian soldier, Luis Alcides Cruz, were forcibly marched away from the wreckage and shot and killed by FARC members. Their bodies were left a short distance from the damaged plane. Marc Gonsalves, Thomas Howes, and Keith Stansell were seized, detained, threatened to be killed, taken into the jungle by FARC members, where they were tortured, chained, starved, denied liberty, hidden and forced at gun point to march throughout Colombia and Venezuela areas for more than 5 years – 1,967 days until they were rescued on July 2, 2008.

93.    Defendants as members of the Cartel of the Suns narco-trafficking conspiracy are jointly and severally liable for the acts of international terrorism perpetrated by the Cartel's member FARC.

94.    Individual Defendants committed these acts directly against Plaintiffs injuring each of them and/or conspired to commit acts to provide  logistics, financing, safe houses and safe havens, transportation, communications, funds, transfer of funds, other in kind material benefit, false documentation or identification including alias names, weapons, explosives, non-medical training, ammunition, and chemicals required to produce cocaine to further terrorist activity of the terrorist organization FARC.

95.    Defendants are liable for the acts of the CARTEL member FARC which kidnapped, held hostage, tortured, and murdered Plaintiffs and/or knowingly aided and abetted or conspired to provide material support to the perpetrators of such acts.  Defendants also aided, abetted, conspired, or otherwise engaged in or provided material support for the acts of international terrorism, including but not limited to providing material support and/or aiding and abetting assistance to the FARC.  This material support and/or aiding and abetting of acts of international terrorism allowed the Cartel of the Suns member FARC to carry out the kidnapping, torture, and wrongful death of Plaintiffs.

96.    Defendant Cartel of the Suns members specifically targeted U.S nationals as terrorist targets, shot down a U.S. registered aircraft performing a counter-narcotics mission, then murdered its pilot Tom Janis, and kidnapped and held hostage Plaintiffs Keith Stansell, Marc Gonsalves and Tom Howes torturing them for over five and one half years.  Non-voluntary proof of life videotapes were created, communicated, and published in the United States for demands

for demilitarized zones and prisoner exchanges. Cartel member FARC claimed responsibility for the murders and hostage taking.

97.    Defendants' activities involved violent and dangerous acts to human life that were, and are, a violation of the criminal laws of the United States or of any State.

98.    Defendants' acts were intended to intimidate or coerce the Colombian and United States civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by kidnapping, hostage taking and assassination.

99.    Defendants' activities occurred outside the territorial jurisdiction of the United States and transcend international boundaries.

100.    Defendants' acts are therefore acts of international terrorism as defined under 18 U.S.C. §2331 and §2333.

101.    Defendants' acts and their participation in the terrorist conspiracy are "terrorism" and "terrorist activity" under 18 U.S.C. §2339.

102.    Defendants intentionally and purposefully hid and concealed their true identities, physical whereabouts and their involvement in the conspiracy including its member FARC's terrorist activities, including hostage taking, kidnapping, killing, imprisoning and torturing Plaintiffs.

103.    As a terrorist organization, or as members of a terrorist organization and criminal conspiracy, Defendants are all terrorist parties who proximately caused the death and injuries described herein and are all jointly and severally liable for the terrorist acts, including acts of international terrorism, the aiding and abetting of international terrorism, conspiring to commit further acts of international terror, engaging in a joint single enterprise to conduct international

terrorism through illegal schemes, and/or the material support and sponsorship of international terrorism.

104.    The Defendants', each individually and severally, and as part of the Cartel of the Suns, unlawful actions have directly, illegally, and proximately caused and continue to cause injuries to the Plaintiffs.

105.    Plaintiffs seek an award of compensatory damages (including treble damages under 18 U.S.C. § 2333(a)) for the foregoing injuries, plus interest pursuant to 28 U.S.C. 1961.

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants, jointly and severally, as follows:

CHRISTOPHER JANIS as the surviving son of Thomas Janis, deceased: for his past and future loss of solatium, mental anguish, bereavement, grief, loss of parental society, comfort, affections and guidance;

MICHAEL JANIS as the surviving son of Thomas Janis, deceased: for his past and future loss of solatium, mental anguish, bereavement, grief, loss of parental society, comfort, affections and guidance;

JONATHAN JANIS as the surviving son of Thomas Janis, deceased: for his past and future loss of solatium, mental anguish, bereavement, grief, loss of parental society, comfort, affections and guidance;

MARC GONSALVES, for his 1,967 days of captivity as a hostage, and for his physical and mental torture during captivity, including past and future physical and mental pain and suffering, disability, disfigurement, permanent injuries, and lost enjoyment of life; and

THOMAS HOWES for his 1,967 days of captivity as a hostage, and for his physical and mental torture during captivity, including past and future physical and mental pain and suffering, disability, disfigurement, permanent injuries, and lost enjoyment of life; and

KEITH STANSELL, for his 1,967 days of captivity as a hostage, and for his physical and mental torture during captivity, including past and future physical and mental pain and suffering, disability, disfigurement, permanent injuries, and lost enjoyment of life.

<u>**Local Rule 7.1 Conflict Disclosure Statement**</u>

Pursuant to Alabama Middle District Local Rule 7.1, Conflict Disclosure Statement, this Rule is inapplicable to Plaintiffs who are individuals with no corporate affiliations.

DATED: April 11, 2025

/s/ Newt Porter_____
NEWTON P. PORTER
(Florida Bar No. 833738)
Pro Hac Vice motion pending
nporter@porterandkorvick.com
PORTER & KORVICK, P.A.
4000 Ponce de Leon Blvd Suite 470
Miami, Florida 33146
Telephone:    (305) 373-5040
Attorneys for Plaintiffs

/s/_Tony Korvick_____
TONY KORVICK
(Florida Bar No. 768405)
Pro Hac Vice motion pending
tkorvick@porterandkorvick.com
PORTER & KORVICK, P.A.
4000 Ponce de Leon Blvd Suite 470
Miami, Florida 33146
Telephone:    (305) 373-5040
Attorneys for Plaintiffs